UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GARY BERNARD WESSLING,                    CIVIL NO. 15-2777 (JRT/JSM)

    Petitioner,

v.                                        REPORT AND RECOMMENDATION

TERRY SANDQUIST,
*In his official capacity as*
*McLeod County Probation Officer,*

    Respondent.


JANIE S. MAYERON, United States Magistrate Judge

    The above matter came before the Court upon petitioner Gary Bernard Wessling's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] and Respondent's Answer and Motion to Dismiss the Petition for Writ of Habeas Corpus [Docket No. 11].

    The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

    On December 13, 2013, Petitioner Gary Wessling ("Petitioner") was convicted in the McLeod County District Court for Refusal to Submit to Chemical Testing, in violation of Minn. Stat. 169A.20, subd. 2.  Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody ("Petition") [Docket No. 1], p. 1.  Petitioner was sentenced to two years' probation and 45 days of incarceration, with four days' credit for time served.  Id.

    The facts underlying Petitioner's conviction are as follows.

On January 17, 2013, a McLeod County deputy sheriff stopped Petitioner after receiving a report that he was driving with a canceled license. Declaration of Daniel J. Koewler in Support of Petition for a Writ of Habeas Corpus, Statement of Facts, and Memorandum of Law [Docket No. 4], Ex. 4 (Order Opinion dated December 12, 2014 in Minnesota Court of Appeals case no. A14-0046) ("Minn. Ct. App. Order") [Docket No. 11-3], p. 1. As he was arresting Petitioner, the deputy smelled an odor of alcohol and observed that Petitioner's eyes were bloodshot. Id. The deputy placed Petitioner inside his squad car, at which time the deputy requested that Petitioner take a preliminary breath test. Id. Petitioner refused the breath test, and the deputy took him to the McLeod County Jail. Id.

At the jail, another deputy read Petitioner the Minnesota Motor Vehicle Implied Consent Advisory[1] and asked him to take a breath test. Id.; Petition for Writ of Habeas Corpus, Statement of Facts, and Memorandum of Law ("Pet.'s Mem.") [Docket No. 2], p. 5. Petitioner refused to submit to chemical testing, and the State of Minnesota charged him with second-degree driving while impaired, test refusal, under Minn. Stat. § 169A.20, subd. 2 (2012). Minn. Ct. App. Order, pp. 1-2.

In April, 2013, the McLeod County District Court denied Petitioner's motion to suppress evidence, having found that the initial stop of Petitioner was lawful, probable cause existed to arrest Petitioner, and there was probable cause to request chemical

---

[1]     The Minnesota Implied Consent Advisory informed drivers that: (1) Minnesota law requires a person to take a test to determine if the person is under the influence of alcohol; (2) refusal to take a test is a crime; (3) if a peace officer has probable cause to believe the person has violated the criminal vehicular homicide and injury laws, a test will be taken with or without the person's consent; and (4) the person has the right to consult with an attorney, but only to the extent that it does not unreasonably delay administration of the test. Minn. Stat. § 169A.51, subd. 2 (2010).

testing.  Id., p. 2.   Following this ruling, Petitioner moved to have Minn. Stat. §§ 169A.20[2] and 169A.53[3] (2012) ("Test Refusal Statutes"), declared unconstitutional in light of the United States Supreme Court's ruling in Missouri v. McNeely, 133 S. Ct. 1552 (2013).   Id. On July 30, 2013, the district court found that the Test Refusal Statutes were constitutional under McNeely.   Id. The court explained that the taking of blood, breath or urine from the body is a search and seizure for Fourth Amendment purposes, but law enforcement need not obtain a warrant if they have probable cause combined with an exigent circumstance.  Koewler Decl., Ex. 1 (Order filed July 30, 2013 in McLeod County District Court, Case No. 43-CR-13-114),  p. 2 (citing Schmerber v. California, 384 U.S. 757, 767 (1966); State v. Hardy, 577 N.W.2d 212, 216 (Minn. 1998); State v. Othoudt, 482 N.W.2d 218, 222 (Minn. 1992)).   Although McNeely invalidated the rule set forth in State v. Netland, 762 N.W.2d 202 (Minn. 2009), which held that the "rapid, natural dissipation of alcohol in the blood" created a single-factor exigency permitting a warrantless blood-alcohol test, the court found that a warrant exception may still exist under the totality of the circumstances.   Id., pp. 3-4 (citing

---

[2]      Minn. Stat. § 169A.20 provides, in relevant part:

> It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license).

> A person who violates this section may be sentenced as provided in section 169A.24 (first-degree driving while impaired), 169A.25 (second-degree driving while impaired), 169A.26 (third-degree driving while impaired), or 169A.27 (fourth-degree driving while impaired).

[3]      Minn. Stat. § 169A.53 sets forth the process for administrative and judicial review of license revocation.

Netland, 762 N.W.2d at 214).  Additionally, the court noted that consent is another well-established exception to the warrant requirement.  Id., p. 5 (citing State v. Diede, 795 N.W.2d 836, 846 (Minn. 2011)).  The court rejected Petitioner's argument that the request for consent and refusal by him under the Test Refusal Statutes was not valid because he faced criminal sanctions if he refused to take a chemical test.  Id. According to the court, that argument was foreclosed by State v. Wiseman, 816 N.W.2d 689 (Minn. Ct. App. 2012), which held that the Test Refusal Statutes criminalized a person's refusal to "submit" to a chemical test, and not a person's refusal to consent to a chemical test.  Id. (citing Wiseman, 816 N.W.2d at 693).  Further, the Wiseman court stated that the Test Refusal Statutes did not implicate a fundamental right, were not arbitrary or capricious, and were a reasonable means of furthering a permissible state objective.  Id., p. 6 (citing Wiseman, 816 N.W.2d at 695-96).  The district court also found that the Test Refusal Statutes were valid because of the compelling public interest in protecting state residents from drunk drivers, and the McNeely decision had discussed with approval test refusal statutes among the 50 states.  Id., pp. 6-7 (citing McNeely, 133 S. Ct. at 1566; Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1989); State v. Schwichtenberg, 2006 WL 463865 (Minn. Ct. App. Feb. 28, 2006) (unpublished)).  Lastly, the court found that the Brooks cases—three consolidated Minnesota appellate court cases decided under the Test Refusal Statutes—had been remanded by the United States Supreme Court for further consideration in light of McNeely, not because Test Refusal Statutes were unconstitutional, but because the decisions were based on the exigent-circumstances rationale set forth in Netland.  Id., pp. 7-8 (citing Brooks v. Minnesota, 133 S. Ct. 1996 (2013)).  For all of these reasons,

the McLeod County District Court found that the Test Refusal Statutes were constitutional. Id.

The parties stipulated to a bench trial, and on October 30, 2013, the McLeod County District Court found Petitioner guilty of second-degree test refusal under Minn. Stat. § 169A.20, subd. 2.  Minn. Ct. App. Order, p. 2; Koewler Decl., Ex. 2 (Findings of Fact and Verdict in McLeod County District Court, Case No. 43-CR-12-1022), pp. 3-4. Petitioner was sentenced on December 13, 2013.  Id., p. 4.

On January 6, 2014, Petitioner appealed his conviction to the Minnesota Court of Appeals.  Koewler Decl., Ex. 3 (Notice of Appeal to Minnesota Court of Appeals).  In support, Petitioner argued that the trial court had erred as a matter of law by concluding that it was constitutional to criminalize the act of refusing to acquiesce to a presumptively illegal warrantless search under the Fourth Amendment.  Resp. Ex. 1 (Appellant's brief in Minnesota Court of Appeals case no. A14-0046) [Docket No. 11-1], pp. 5-24.[4]  In particular, and relevant to the instant case, Petitioner maintained that Minnesota's test refusal statute criminalizes the fundamental constitutional right to refuse a warrantless search, thereby rendering the statute unconstitutional.  Id., pp. 9-15 (citing Camara v. Mun. Court of City & County of San Francisco, 387 U.S. 523, 540 (1967); See v. City of Seattle, 387 U.S. 541, 546 (1967)).  Although the legislature may impose conditions on privileges it grants, it may not condition such privileges on the relinquishment of constitutional rights.  Id., p. 14-15 (citing Frost v. Railroad Comm'n, 271 U.S. 583, 593-94 (1926)).  Petitioner further contended that the doctrine of unconstitutional conditions rendered Minnesota's test refusal law unconstitutional and

---

[4]      The Court cites to page numbers as they appear in the original documents, and not as assigned by the Court's electronic case filing system, CM/ECF.

unenforceable.  Id., pp. 15-19.  According to Petitioner, the legislature cannot compel, coerce or prevent individuals from exercising constitutional rights.  Id., p. 15 (citing Frost, 271 U.S. at 593-94).  In Netland, the Minnesota Supreme Court held that under the exigency exception to the Fourth Amendment, no warrant was necessary to secure a blood-alcohol test where there was probable cause to suspect a crime in which chemical impairment is an element of the offense.  Id., p. 16 (citing 762 N.W.2d at 214).  However, in McNeely, the United States Supreme Court rejected this theory and held that courts should consider the totality of the circumstances to determine whether there was insufficient time to obtain a warrant in a DWI case.  Id., p. 17.  Thus, Petitioner maintained that he had standing to challenge Minnesota's test refusal law under the doctrine of unconstitutional conditions.  Id.

Petitioner indicated that he was not challenging the Minnesota legislature's ability to condition the licensing of drivers on the waiver of a constitutional right where the consequence of test refusal was loss of the driver's license.  Id.  However, it is "altogether another, absolutely unconstitutional thing to say that a breach of the 'implied contract' will have criminal consequences."  Id., p. 18.  In Petitioner's view, declaring Minnesota's test refusal statute unconstitutional would not eliminate the State's ability to prosecute impaired drivers, as traditional enforcement tools such as search warrants and warrant exceptions will remain part of the State's "massive prosecutorial arsenal." Id., p. 19.

Finally, Petitioner urged that State v. Bernard, 844 N.W.2d 41 (Minn. Ct. App. 2014) ("Bernard I"), was not binding on the court because it was based on the "inevitable warrant" doctrine rejected by the United States Supreme Court.  Id., p. 19-22

6

(citing <u>Camara</u>, 387 U.S. at 540; <u>See</u>, 387 U.S. at 546; <u>Katz v. United States</u>, 389 U.S. 347 (1967); <u>Johnson v. United States</u>, 333 U.S. 10 (1948)).  Further, <u>Bernard I</u> could be reviewed and reversed by the Minnesota Supreme Court.  <u>Id.</u>, p. 22 (citation omitted).

On December 12, 2014, the Minnesota Court of Appeals issued its order affirming the decision of the McLeod County District Court.  The court held that under <u>Bernard I</u>,

> [t]he state is not constitutionally precluded from criminalizing a suspected drunk driver's refusal to submit to a chemical test under circumstances in which the requesting officer had grounds to have obtained a constitutionally reasonable nonconsensual chemical test by securing and executing a warrant requiring the driver to submit to testing.

Koewler Decl., Ex. 4, p. 3 (quoting <u>Bernard I</u>, 844 N.W.2d at 47).  Accordingly, the district court did not err when it found Petitioner guilty of second-degree test refusal because grounds existed to obtain a warrant.  <u>Id.</u>

On January 9, 2014, Petitioner filed a petition for review of the appellate court's decision in the Minnesota Supreme Court.  Resp. Ex. 4 (Petition for Review of Decision of Minnesota Court of Appeals, Case No. A14-0046).  The issue presented was whether the Court of Appeals erred "in ruling that Minnesota's DWI Test Refusal law – making it a crime to refuse to submit to a presumptively illegal, warrantless search – is constitutional." <u>Id.</u>, p. 3.[5]  In support, Petitioner again argued that the rationale behind the Minnesota Court of Appeals' decision in <u>Bernard I</u> was contrary to United States Supreme Court precedent, and therefore, his appeal should be stayed pending review of that decision by the Minnesota Supreme Court.  <u>Id.</u>, pp. 5-9.

---

[5]     The Court cites to the page number assigned by the Court's CM/ECF system as no pages were assigned by Petitioner to this pleading.

On February 25, 2015, the Minnesota Supreme Court granted Petitioner's petition for review and stayed all proceedings pending its review of <u>Bernard I</u>. Resp. Ex. 5 (Order in Minnesota Supreme Court, Case No. A14-0046 dated Feb. 25, 2015).

On February 11, 2015, the Minnesota Supreme Court issued its decision in <u>Bernard I</u>, holding that a warrantless breath search was permissible under the Fourth Amendment as a search incident to a valid arrest. 859 N.W.2d 762, 766-72 (Minn. 2015) ("<u>Bernard II</u>").[6]

On April 14, 2015, the Minnesota Supreme Court vacated its order of February 25, 2015, and denied Petitioner's Petition for Review. Resp. Ex. 6 (Order in Minnesota Supreme Court, Case No. A14-0046 dated April 14, 2015).

On June 19, 2015, Petitioner filed the instant habeas petition. Petitioner argued that the State of Minnesota violated his due process rights under the Fourteenth Amendment, and rights under the Fourth and Fifth Amendments, by deeming it a crime to refuse to submit to a custodial, warrantless search. Pet.'s Mem., pp. 1-4, 10-11. Petitioner maintained that he was being held in custody[7] pursuant to a Minnesota Supreme Court decision that is directly contrary to numerous United States Supreme Court cases. p. 11. In <u>Bernard II</u>, the Minnesota Supreme Court held that chemical

---

[6]     Rehearing was denied on March 16, 2015.

[7]     Although Petitioner is no longer incarcerated or under probation, his habeas petition is not moot because he faces collateral consequences from his allegedly unlawful punishment. <u>Leonard v. Nix</u>, 55 F.3d 370, 372–73 (8th Cir. 1995) (citing <u>Carafas v. LaVallee</u>, 391 U.S. 234, 239-40 (1968)). Such collateral consequences are presumed to stem from a criminal conviction even after release. <u>Id.</u> at 373; <u>see also</u> <u>Elliot v. State of Minnesota</u>, Civ. No. 15-2812 (ADM/LIB), 2016 WL 4257505, at *6 (D. Minn. July 1, 2016) ("When a habeas petitioner is challenging the validity of his conviction his release from prison, even his unconditional release, will not cause his petition to be moot, because there are 'collateral consequences' of the conviction that will continue to affect the petitioner even after his release from custody." (citing <u>Carafas</u>, 391 U.S. at 237).

tests of the breath in the DWI context are exempt from the Fourth Amendment's warrant requirement pursuant to the search-incident-to-arrest doctrine, thereby making it permissible (under rational basis review) to penalize the refusal to submit to such a search.  Pet.'s Mem., pp. 11-12, 13 (citing Bernard II, 859 N.W.2d at 772).  Petitioner contended that Bernard II ignored the explicit holdings of Schmerber, 384 U.S. at 767-68, and McNeely, 133 S. Ct. at 1566, which both held that the search-incident-to-arrest exception to the warrant requirement is inapplicable to "bodily intrusions" for evidence in DWI prosecutions.  Id., p. 12, 14-15 (citations omitted).

Petitioner also submitted that Bernard II was directly contrary to the rationale and guidance provided in Arizona v. Gant, 556 U.S. 332 (2009).  Id., p. 16 (citing Gant, 556 U.S. at 339).  According to Petitioner, for the search-incident-to-arrest exception to apply, the search must be spatially and temporally proximate to the arrest.  Id., pp. 16-17 (citing United States v. Chadwick, 433 U.S. 1, 15 (1977); New York v. Belton, 453 U.S. 454 (1981); United States v. Camou, 773 F.3d 932, 938 (9th Cir. 2014); United States v. Caseres, 533 F.3d 1064, 1073 (9th Cir. 2008); United States v. Smith, 389 F.3d 944, 951 (9th Cir. 2004)).  In Petitioner's case, law enforcement determined that he had no weapons or destructible evidence on his person, and a significant amount of time passed while he was being transported to the jail.  Id., p. 17.  Time, distance, and the confirmed absence of weapons separated Petitioner's actual arrest from the search of his breath at the jail, and therefore, the search was not "incident to arrest."  Id. (citing Gant, 556 U.S. at 339).

Additionally, Petitioner maintained that Bernard II was directly contrary to the holdings in Skinner, Katz, and Kyllo v. United States, 533 U.S. 27, 35 (2001).  Id.,

pp. 18-21.  <u>Skinner</u> stands for the proposition that breath tests are constitutionally protected "bodily integrity" searches, while <u>Katz</u> and <u>Kyllo</u> explain why courts cannot draw arbitrary distinctions between breath tests and blood tests.  <u>Id.</u>, p. 19.  Chemical testing performed on substances extracted from the body is a "textbook example" of using specialized technology not available to the general public to execute a search, and it requires physical intrusion into a constitutionally protected area.  <u>Id.</u> (citing <u>Kyllo</u>, 533 U.S. 34).  Broader social objectives cannot justify a warrantless search when the immediate law enforcement purpose of the search is to gather evidence for a criminal case.  <u>Id.</u>, pp. 19-21 (citing <u>McNeely</u>, 133 S. Ct. at 1565; <u>Ferguson v. City of Charleston</u>, 532 U.S. 67, 85 (2001)).

Petitioner further contended that <u>Bernard II</u> was directly contrary to the holdings of <u>Camara</u> and <u>See</u>.  <u>Id.</u>, pp. 21-22.  In those cases, the United States Supreme Court held that it is unconstitutional to criminalize a refusal to submit to a presumptively illegal warrantless search.  <u>Id.</u>, p. 22 (citing <u>Camara</u>, 387 U.S. at 523; <u>See</u>, 387 U.S. at 541). Because Petitioner faced an independent criminal charge for failing to submit to a warrantless search, the State penalized him for exercising his Fourth Amendment rights, thereby denying him due process of law.  <u>Id.</u>

Finally, Petitioner argued that the Test Refusal Statutes violated the doctrine of unconstitutional conditions, which dictates that the state cannot require the relinquishment of a constitutional right as a condition for granting a privilege.  <u>Id.</u>, pp. 22-25 (citing <u>44 Liquormart, Inc. v. Rhode Island</u>, 517 U.S. 484, 513 (1996); <u>Mapp v. Ohio</u>, 367 U.S. 643, 660 (1961); <u>Frost v. Railroad Commission of State of California</u>, 271 U.S. 583, 593-94, 599 (1926); <u>Home Ins. Co. of New York v. Morse</u>, 87 U.S. 445,

451 (1874); Bernard II, 859 N.W.2d at 773).  The doctrine applies in Petitioner's case because the Test Refusal Statutes violate the fundamental right to due process of law under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution by authorizing the state to criminally prosecute drivers for refusing to waive their constitutional rights to a search warrant, privacy and bodily integrity.  Id., p. 24.  The Test Refusal Statutes establish a statutory exception to the warrant requirement by conditioning the privilege of driving on the surrender of constitutional rights.  Id., p. 25.

In response, Respondent first asserted that Petitioner's claims under the Fourteenth and Fifth Amendments were not "fairly presented" in state court, and therefore, those claims must be dismissed.  Respondent's Answer and Motion to Dismiss the Petition for Writ of Habeas Corpus ("Resp.'s Mem.") [Docket No. 11], p. 7 (citing Duncan v. Henry, 513 U.S. 364, 365-66 (1995)).  Respondent also contended that Petitioner's Fourth Amendment claim was barred under the doctrine enunciated in Stone v. Powell, 428 U.S. 465, 494 (1976), because the state afforded Petitioner a full and fair opportunity to raise present this claim.  Id., pp. 7-8 (citing Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995)).

Alternatively, even if Petitioner's Fourth Amendment claim was not "Stone-barred," his habeas petition must still be denied because Bernard II is not contrary to established United States Supreme Court case law.  Id., pp. 8-9 (citing Lopez v. Smith, 574 U.S. ___ (2014) (slip op. at 5)).  Petitioner's reliance on Schmerber was misplaced because that case held that the Fifth Amendment right against self-incrimination did not apply to a warrantless search of a person's blood and the introduction of such evidence at trial.  Id., pp. 9-10 (citing Schmerber, 384 U.S. at 761, 766-67).  Schmerber did not

discuss the specific question in this case of whether the state may constitutionally criminalize chemical test refusal, and therefore, the state court's decision could not be contrary to <u>Schmerber</u>. <u>Id.</u>, p. 10 (citation omitted).

Respondent submitted that Petitioner's reliance on <u>McNeely</u> was similarly unavailing because the <u>McNeely</u> court established that implied consent laws requiring chemical testing are constitutional. <u>Id.</u>, pp. 10-11 (citing <u>McNeely</u>, 133 S. Ct. at 1566; <u>Wall v. Stanek</u>, 794 F.3d 890, 895-96 (8th Cir. 2015), <u>cert. granted</u>, <u>judgment vacated</u>, 136 S. Ct. 2540 (2016)).

With regard to <u>Gant</u>, Respondent maintained that the case did not address the search of a person, but only the search of the area within the immediate control of the arrestee. <u>Id.</u>, pp. 11-12 (citing <u>Gant</u>, 556 U.S. at 335; <u>Chimel v. California</u>, 395 U.S. 752, 762-63 (1969)). Further, any discussion of the search of a person incident to arrest was dicta, and "clearly established Federal law" for purposes of federal habeas review includes only the holdings of United States Supreme Court decisions. <u>Id.</u>, p. 12 (citing <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014)). Accordingly, <u>Bernard II</u> is not contrary to <u>Gant</u>. <u>Id.</u>

As for Petitioner's argument that <u>Bernard II</u> ran directly contrary to the holdings of <u>Skinner</u>, <u>Katz</u> and <u>Kyllo</u>, Respondent contended that Petitioner's conclusion was unsupported, and his petition must be denied on that basis. <u>Id.</u>, pp. 12-13 (citing <u>Skinner</u>, 489 U.S. at 602). In response to Petitioner's statement that in <u>Camara</u> and <u>See</u>, it was "almost treated as a foregone conclusion that it is impermissible to criminally penalize the exercise of a constitutional right," Respondent urged that "almost" is not enough to grant a federal habeas petition. <u>Id.</u>, p. 13 (citing <u>White</u>, 134 S. Ct. at 1702).

Lastly, Respondent argued that the doctrine of unconstitutional conditions did not apply to Petitioner's case because under Bernard II, a warrantless search of Petitioner's breath was constitutionally permitted.  Id., pp. 13-14.

In reply, Petitioner submitted that he had properly exhausted all available state court remedies and had fairly presented his due process claims in the McLeod County District Court, the Minnesota Court of Appeals and the Minnesota Supreme Court. Petitioner's Reply to Respondent's Answer and Motion ("Pet.'s Reply") [Docket No. 12], p. 3.  In support, Petitioner pointed to the fact that at the trial court level, the district court relied upon Wiseman, which directly addressed due process rights, and not the Fourth Amendment.  Id., pp. 3-4 (citing Wiseman, 816 N.W.2d at 693, 696).  Petitioner maintained that a due process violation exists when another fundamental constitutional right is implicated.  Id.  In this case, as in Wiseman, the state took away Petitioner's right to demand that law enforcement obtain a warrant, which is a due process violation, and not a Fourth Amendment violation.  Id., pp. 4-5 (citing Frost, 271 U.S. at 593-94). Petitioner also submitted that he had raised these due process arguments in both his Petition for Review to the Minnesota Court of Appeals (by citing to Frost) and the Petition for Review to the Minnesota Supreme Court, in which he cited to both Frost and Wiseman.  Id.

As for the State's argument that his Fourth Amendment claims were Stone-barred, Petitioner claimed that where, as here, no search was executed, the Stone doctrine did not apply.  Id., p. 4.

Petitioner did not address Respondent's contention that any claim asserting a violation of the Fifth Amendment had not been exhausted.

II.     **DISCUSSION**

A.     **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. AEDPA provides that a district court may entertain a habeas petition submitted by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "AEDPA modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas retrials and to ensure state-court convictions are given effect to the extent possible under law." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted).

Section 2254 provides that a habeas corpus petition

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Eighth Circuit described review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it 'confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result.

> Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146
> L.Ed.2d 389 (2000).  A state court "unreasonably applies"
> federal law when it "identifies the correct governing legal rule
> from [the Supreme] Court's cases but unreasonably applies
> it to the facts of the particular state prisoner's case," or
> "unreasonably extends a legal principle from our precedent
> to a new context where it should not apply or unreasonably
> refuses to extend that principle to a new context where it
> should apply."  Id. at 407.
>
> A federal court may not issue the writ simply because it
> "concludes in its independent judgment that the relevant
> state-court decision applied clearly established federal law
> erroneously or incorrectly.  Rather, that application must also
> be unreasonable."  Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006), cert. denied, 549 U.S. 1223

(2007).

Under this standard, federal courts "must deny a writ—even if [they] disagree

with the state court's decision—so long as that decision is reasonable in view of all the

circumstances."  May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams,

529 U.S. at 409-13).   "'[T]he Supreme Court has repeatedly stressed that an

unreasonable application is different from an incorrect one.'  We may not grant a writ of

habeas corpus unless the relevant state court decision is both wrong and

unreasonable."  Honeycutt v. Roper, 426 F.3d 957, 960 (8th Cir. 2005) (internal citation

omitted) (quoting Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003)).

### B.   Fair Presentment of Federal Claims

It is well established that a federal court cannot entertain a petition for a writ of

habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all

available state-court remedies as to each of his claims.  28 U.S.C. § 2254(b)(1)(A)

("An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982).

To meet the exhaustion requirement, "'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (quoting O'Sullivan, 526 U.S. at 845); see also Dansby v. Hobbs, 766 F.3d 809, 823 (8th Cir. 2014) ("To exhaust a claim properly in state court, a prisoner must give the state courts a fair opportunity to act on the claim.") (citation omitted). "The onus rests on the prisoner to present the substance of his federal claims 'in each appropriate state court (including a state supreme court with powers of discretionary review).'" Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010) (citations omitted).

"A petitioner must present both the factual and legal premises of his claims to the state courts to exhaust the claims properly." Dansby, 766 F.3d at 823 (internal quotation marks omitted) (citing Flieger v. Delo, 16 F.3d 878, 884 (8th Cir. 1994)). "The legal aspect of this requirement is satisfied if the petitioner's argument to the state court 'refer[s] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. (alteration in original) (quoting Abdullah v. Groose, 75 F.3d 408, 412 (8th Cir. 1996) (en banc)).

In this case, while clearly the focus of Petitioner's appeal to the Minnesota Court of Appeals and Minnesota Supreme Court was the Fourth Amendment—in fact, in scouring his briefs to both courts, this Court could find no explicit reference to the

Fourteenth Amendment—it is also true that his Fourth Amendment argument was grounded in the right to due process under the Fourteenth Amendment.  For example, in his brief to the Minnesota Court of Appeals, Petitioner cited to <u>Frost</u>, which held that conditioning a privilege on the relinquishment of a constitutional right violates the due process clause of the Fourteenth Amendment.   <u>See</u> Resp. Ex. 1, pp. 14-15. Additionally, Petitioner repeatedly referenced <u>Bernard I</u>, which squarely confronted the issue of whether it was a violation of due process to prosecute a person for refusing to consent to a warrantless breath test in the absence of exigent circumstances.  <u>Id.</u>, pp. 19-24.   Indeed, the Minnesota Court of Appeals relied on <u>Bernard I</u> in its order affirming the decision of the McLeod County District Court.  <u>See</u> Koewler Decl., Ex. 4, p. 3 (quoting <u>Bernard</u>, 844 N.W.2d at 47).   Likewise, in his Petition for Review in the Minnesota Supreme Court, Petitioner again cited to <u>Frost</u> and <u>Bernard I</u>.  Resp. Ex. 4, pp. 6-7.

Because Petitioner consistently referenced both federal and state cases that raised Fourteenth Amendment due process issues, this Court concludes that the claims raised in the instant habeas petition were properly presented to the state courts and are fully exhausted.[8]

---

[8]     In his opening memorandum, Petitioner referenced in passing the Fifth Amendment (Pet.'s Mem., p. 11), but never discussed it again in his brief, nor in his reply after Respondent asserted that Petitioner had not exhausted any claim premised on the Fifth Amendment.  Consequently, the Court treats any attempt to rely on the Fifth Amendment as waived.  <u>See</u> <u>United States v. Picardi</u>, 739 F.3d 1118, 1123 n.2 (8th Cir. 2014) ("Because Picardi did not develop this issue in his briefs as required, he has waived his argument.") (citing <u>United States v. Frausto</u>, 636 F.3d 992, 998 (8th Cir. 2011)); <u>Cubillos v. Holder</u>, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) ("Although Cubillos makes reference to CAT relief in his opening brief, he did not develop this argument. Therefore, we deem it waived.") (citing <u>Hasalla v. Ashcroft</u>, 367 F.3d 799, 805 (8th Cir. 2004)).  However, even if Petitioner did intend to premise his Petition on the Fifth

C.    **Stone Doctrine**

Fourth Amendment claims are not cognizable in federal habeas proceedings if the state provided the petitioner an opportunity for the full and fair litigation of such claims.  Stone, 428 U.S. at 494; see also Chavez v. Weber, 497 F.3d 796, 801-02 (8th Cir. 2007) (same) (citation omitted).  "[A] Fourth Amendment claim is Stone-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system."  Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994).

In this case, Petitioner has not raised a Fourth Amendment claim.  As Petitioner clarified in his reply brief:

> Factually and legally, [Petitioner's] Due Process rights were violated, not his Fourth Amendment rights – the Fourth Amendment colors the argument only so far as law enforcement were attempting to execute a search that could have violated his rights under the Fourth Amendment.  But no search was executed, and there are no fruits of that search to be suppressed.  Instead, the State violated [Petitioner's] Due Process rights when it failed to execute a warrantless, custodial search, and instead charged and convicted [Petitioner] of Second Degree DWI – Refusal to Submit to a Chemical Test in violation of Minn. Stat. § 169A.20, subd. 2 (2012) . . . .

Pet.'s Reply, p. 2.

Where no search was actually executed, the Stone doctrine does not apply.  Accordingly, the Court proceeds to address the merits of Petitioner's claims.

---

Amendment, the Court agrees that the claim was not exhausted as it was never raised with any Minnesota court.

**D.    Petitioner's Constitutional Challenge**

Subsequent to the filing of the instant Petition and the briefing by the parties on Respondent's Motion to Dismiss, the United States Supreme Court granted certiorari and consolidated for appeal Bernard II, and two other drunk driving cases involving test refusal statutes, State v. Birchfield, 858 N.W.2d 302 (N.D. 2015), and Beylund v. Levi, 859 N.W.2d 403 (N.D. 2015).  Birchfield v. N. Dakota, 136 S. Ct. 2171 (June 23, 2016). "The question presented [on appeal was] whether such laws violate the Fourth Amendment's prohibition against unreasonable searches."  Id. at 2166–67; see also, id. at 2172 ("We granted certiorari in all three cases and consolidated them for argument, in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream.") (citation omitted).  On June 23, 2016, the Supreme Court issued its decision holding that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests.  Consequently, the Court affirmed the decision of the Minnesota Supreme Court in Bernard II, and reversed the North Dakota decisions in Birchfield and Beylund. In reaching its decision regarding Bernard, the Supreme Court confronted a set a facts and arguments nearly identical to Petitioner's case:

> On August 5, 2012, Minnesota police received a report of a problem at a South St. Paul boat launch. Three apparently intoxicated men had gotten their truck stuck in the river while attempting to pull their boat out of the water. When police arrived, witnesses informed them that a man in underwear had been driving the truck. That man proved to be William Robert Bernard, Jr. . . . Bernard admitted that he had been drinking but denied driving the truck (though he was holding its keys) and refused to perform any field sobriety tests. After noting that Bernard's breath smelled of alcohol and that his

eyes were bloodshot and watery, officers arrested Bernard for driving while impaired.

Back at the police station, officers read Bernard Minnesota's implied consent advisory, which like North Dakota's informs motorists that it is a crime under state law to refuse to submit to a legally required BAC test. . . .

The officers asked Bernard to take a breath test. After he refused, prosecutors charged him with test refusal in the first degree because he had four prior impaired-driving convictions. . . .

The Minnesota District Court dismissed the charges on the ground that the warrantless breath test demanded of Bernard was not permitted under the Fourth Amendment. The Minnesota Court of Appeals reversed, and the State Supreme Court affirmed that judgment. Based on the longstanding doctrine that authorizes warrantless searches incident to a lawful arrest, the high court concluded that police did not need a warrant to insist on a test of Bernard's breath. . . . .

Id. at 2171 (internal citations omitted).

Following a discussion of the principles set forth in Schmerber, McNeely, Skinner, Katz, Camara and Gant,[9] the Supreme Court held that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving. The impact of breath tests on privacy is slight, and the need for BAC testing is great." Id. at 2184. Accordingly, the Court determined that the Fourth Amendment did not require law enforcement officers to obtain a warrant prior to demanding that Bernard consent to a breath test. Id. at 2186.

In the instant case, Petitioner claimed that it was a violation of his constitutional rights for the state to criminalize his refusal to consent to a custodial warrantless search of his breath.   Under the doctrine of unconstitutional conditions, the Test Refusal

---

[9]     These are the very cases Petitioner cites in support of his argument that Bernard II was directly contrary to United States Supreme Court precedent.

Statutes violate due process only if the state could not directly conduct warrantless breath searches of DWI arrestees.   See Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 59 (2006) ("Under this principle, known as the unconstitutional conditions doctrine, the Solomon Amendment would be unconstitutional if Congress could not directly require universities to provide military recruiters equal access to their students.").   However, as set forth in Birchfield, a warrantless search of a person's breath incident to a valid DWI arrest does not violate the Fourth Amendment, and therefore, Petitioner had no constitutional right to demand that law enforcement obtain a warrant before submitting to the search.   In other words, the Test Refusal Statutes did not criminalize Petitioner's exercise of his constitutional rights, and Respondent's motion to dismiss the Petition must be granted.[10]

---

[10]     In his opening memorandum, Petitioner also argued that the search-incident-to-arrest exception applies only when the search is spatially and temporally proximate to the arrest, or when there is a risk that the arrestee is carrying weapons or destructible evidence.   Pet.'s Mem., pp. 16-17.   While not specifically addressed in McNeely or Birchfield, Petitioner's argument is without merit.   First, Petitioner's conclusory statement that a "significant" amount of time passed while he was being transported to the jail, (Pet.'s Mem., p. 17), finds no factual support in the record before the Court.

Second, in Birchfield, Bernard raised an argument similar to Petitioner's, asserting that warrantless breath tests do not further the Chimel rationales of preventing the destruction of evidence or protecting officer safety.   See Reply Brief for Petitioner in United States Supreme Court Case No. 14-1470, 2016 WL 1459197, at *5-6.   According to Bernard, "there is nothing that arrestees can do to destroy BAC evidence – and . . . not even Minnesota argues that blood alcohol tests are needed to protect officer safety . . . ."   Id., at *6.   However, the Supreme Court rejected this rationale, holding that the "search-incident-to-arrest exception . . . is categorical.   It does not depend on an evaluation of the threat to officer safety or the threat of evidence loss in a particular case."   136 S. Ct. at 2183.

Third, in those cases in which the United States Supreme Court addressed the legality of implied consent laws, as here, the defendant was stopped and initially assessed by law enforcement for drunk driving, and after the arrest had been made, the implied consent advisory was administered to the defendant sometime after that.   For example, in Birchfield, just as with Petitioner, after being stopped for drunk driving,

For all of these reasons, this Court concludes that the decisions of the Minnesota Supreme Court and the Minnesota Court of Appeals affirming Petitioner's conviction were not contrary to or an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court.  Therefore, Petitioner's petition for writ of habeas corpus should be denied.

---

Bernard was arrested and then transported to the police station where he was read the implied consent advisory, and Beylund was arrested and then transported to a nearby hospital where he was administered the implied consent advisory.  Birchfield, 136 S. Ct. at 2171-72.  Similarly, in McNeely, after performing poorly on a battery of field-sobriety tests on the road, McNeely was arrested and transported to a nearby hospital for blood testing. 133 S. Ct. at 1556–57.  None of these cases held that the warrantless chemical tests were too remote in time or place to be considered "incident to arrest."

Fourth, to the extent timeliness is a factor in determining whether a warrantless chemical test is a permissible search incident to an arrest, the facts of this case support the conclusion that the search of Petitioner's breath was constitutionally justified.

> The timeliness requirement for "luggage or other personal property not immediately associated with the person of the arrestee" is . . . constitutionally fairly strict.
>
> On the other hand, searches of the person and articles "immediately associated with the person of the arrestee," are measured with a different, more flexible constitutional time clock.  Searches of the person and those articles "immediately associated" with the person may be made either at the time of arrest or when the accused arrives at the place of detention.

Curd v. City Court of Judsonia, Arkansas, 141 F.3d 839, 843 (8th Cir. 1998) (citations omitted).  Indeed, federal courts have approved the search of an arrestee's clothing after an overnight stay in jail, United States v. Edwards, 415 U.S. 800, 803 (1974), as well as a search of an arrestee's wallet at the police station.  United States v. Phillips, 607 F.2d 808, 809-10 (8th Cir. 1979).  In this case, the breath in Petitioner's lungs was at least as "immediately associated" with his person as his clothing or wallet. Accordingly, this Court concludes that the search of Petitioner's breath at the McLeod County Jail was "contemporaneous" with his arrest.

## III.    CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Copeland v. Washington, 232 F.3d 969, 977 (8th Cir. 2000).  To make such a showing, the legal issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the issue must warrant further proceedings. See Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994); see also McDaniels v. Olmstead Cnty., 402 F. App'x 155, 156 (8th Cir. 2010) ("The district court denied McDaniels's habeas petition but granted him a certificate of appealability as to the alleged conflict question, concluding that the question is 'debatable among reasonable jurists.'") (citation omitted).  In this case, the legal issues raised by Petitioner are not debatable among reasonable jurists, and another court would not have decided the issues raised in this § 2254 motion differently.   For this reason, the Court concludes that Petitioner has failed to make the required substantial showing of the denial of a constitutional right, and the Court recommends that no certificate of appealability be issued.

## IV.    RECOMMENDATION

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

1.    Petitioner Gary Bernard Wessling's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **DENIED**.

2.    Respondent's Answer and Motion to Dismiss the Petition for Writ of Habeas Corpus [Docket No. 11] be **GRANTED**.

3.    No certificate of appealability be issued.

Dated:      November 16, 2016                    *s/ Janie S. Mayeron*
                                                 JANIE S. MAYERON
                                                 United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 5, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.